RICHARD D. LATHROP et al., Respondents, v. BENJAMIN CLAPP and THEODORE W. CLAPP, Appellants.

Upon an examination under supplementary proceedings after judgment, where it appears that the judgment debtor has transferred property to a witness, the latter is bound to answer all questions touching the transfer, and seeking for information as to and bearing upon the question, whether such transfer was for a good consideration, and was honest or fraudulent; and upon his refusal to answer, he is liable to be punished as for contempt.

Examinations of witnesses and parties in such proceedings are regulated by the provisions of section 292 of the Code, and are not limited by section 299.

The order to punish a witness as for a contempt in refusing to answer in such proceedings is under section 302 of the Code, and may be made by the judge out of court, and need not state that the proceeding had been impeded, impaired, prejudiced or defeated by the misconduct, as required in 2 *R. S.*, 538, § 20. (MURRAY J., *contra.*)

(This cause was submitted on the 16th of January, 1869, and decided on the 23d March, 1869.)

APPEAL from an order of the General Term of the fourth district, affirming an order of the Special Term, punishing the defendants as for a contempt. The plaintiffs recovered a judgment against Marvin W. Clapp, and, after the return of an execution unsatisfied, they instituted proceedings supplementary to execution, under section 292 of the Code; and, upon the usual order in such cases being made and served upon the defendants, the matter was referred to Edgar Hall, Esq., as referee, to examine the said Marvin D. Clapp and take his answers on oath concerning his property, &c., and also to examine on oath such witnesses as may be offered by the respective parties, &c.

The defendant, Marvin W. Clapp, and these defendants in these proceedings, were subpœnæd as witnesses, and, upon being sworn, refused to answer anything in regard to the amount of property of the said Marvin W. Clapp, or to whom he had made a transfer of his property, or in what his property consisted, or what property had been transferred to

Theodore W. Clapp, his son, or for what consideration the same was transferred, &c. It had been proved by the defendant, Marvin W., that he had made a sale of his store, of goods, &c., for $5,000, crediting the son $1,500 for prior services, and taking his notes for the balance, &c. And these witnesses, Benjamin and Theodore W., on objections being taken by the counsel of Marvin W., and the witnesses being advised by such counsel not to answer, refused, the counsel for Marvin W., claiming and insisting before said referee that, as it was proved that there had been a transfer of this property to Theodore by this defendant Marvin W., these witnesses were under no legal obligation to answer any questions in regard to the property. Among other things, they absolutely refused to swear that any transfer had been made, or that they were in possession of the property. They refused to state what property Marvin W. had at any time, or what had become of it, whether they had received any of it, or how much.

The referee required these witnesses to answer the questions put to them, and they still refused; and the plaintiffs applied to the judge before whom the proceedings were pending upon the proper papers, and procured an order that they show cause before him, on a day named, why they should not be punished as for a contempt in not answering such questions. These questions and their refusals are all minutely set forth in the affidavits on which the order to · show cause was procured. These papers and the order to show cause were duly served on them, and they appeared on the day and presented affidavits, but did not pretend to deny any of the questions claimed to have been put, or their refusals to answer them, and based their defence upon the ground that they were not required in law to answer them. The judge made a peremptory order upon them requiring them to answer, and fined them twenty-one dollars each, as for a contempt, to satisfy the costs and expenses of the plaintiffs occasioned by their misconduct and contempt, and as a fine therefor, &c. This order did not recite or state

HAND — VOL. I. 42

that the proceeding had been impeded, impaired, prejudiced or defeated by the misconduct of the defendants. The defendants appealed from the order to the General Term of the Supreme Court, where the same was affirmed, and the defendants appealed therefrom to this court.

*James Gibson,* for appellant.

*N. B. Milliman,* for respondent.

MASON, J. I am of opinion, in this case, that the order of the Supreme Court can be affirmed without passing upon the question whether a witness, who is examined on proceedings under section 292 of the Code, can be required to give evidence as to the consideration and good faith of a transfer of property to him after he has sworn there has been such a transfer made to him, and he is in possession and claims title.

These witnesses entirely refused to state what property this debtor had at the time, or what had become of it, or whether they knew anything about it, or whether they had received any of it, &c. They, in fact, refused to swear whether any transfer had been made by the debtor of his property, &c.

Be this as it may, however, they were in duty bound to answer all these questions, seeking information as to recent transfers of property by this debtor, and particularly as to transfers made to them, and any questions seeking for information as to whether such transfers were honest or not. In short, it was their duty to answer fully any question tending to disclose any property of this debtor, whether held by him or by a fraudulent transferee, who holds in fraud of creditors. I am aware that a different construction has been put upon the right of examination upon these proceedings, under this section 292. These decisions have given too much importance to section 299, which was never intended to regulate the examination or, in the least, to intimate any rule by which it was to be conducted. The right of the examination,

its object and scope, are all given by section 292 of the Code. It is only necessary to give this section its full force to justify this fine upon these appellants. In the first place this section gives to the judgment creditor the order on making the proof required. "*The order shall require such debtor to appear and answer concerning his property.*" (Section 272.)

It is simply absurd to say that this means he shall answer partially and not fully. Such a construction would stultify the framers of this statute. We have to consider for a moment the object and design of giving to the creditor this examination of the debtor and any other witnesses he may produce to make this matter perfectly plain. Its primary object, undoubtedly, was to give the creditor the benefits of a discovery, as to the debtor's property; and in that respect, the legislature has not been guilty of the folly of saying you may have a discovery, but must not inquire into any fraudulent conveyances, or transfers of property, or any secret or fraudulent trusts created. There is no ambiguity in this language, it requires the debtor to answer concerning his property. If the terms were ambiguous there should be such a meaning attached to the words used as is most suitable to the subject matter of the act, for it is presumed they were intended to be used in accord with the general subject which law makers had in view. (Smith on Statutes, 631.) The object in this act was to give a judgment creditor, who had been unable to collect his debt by ordinary process of law, a relief in this summary way to discover his debtor's property, if any he have. This right of discovery was intended to be made full and complete, as is apparent from subsequent portions of the section. The section declares that "*on examination under this section, either party may examine witnesses in his behalf, and the judgment debtor may be examined in the same manner as any other witness.*" And if there is any force in language, the legislature have intimated, in clear and unmistakable terms, this examination was not intended to be restricted as here claimed, but that the fullest scope was intended to be given to ferret out fraudulent transfers of property; else why did

they close up the section by saying that "*no person shall, on examination pursuant to this chapter, be excused from answering any question, on the ground that his examination will tend to convict of the commission of a fraud; but his answer shall not be used as evidence against him in any criminal proceeding or prosecution. Nor shall he be excused from answering any question on the ground that he has, before the examination, executed any conveyance, assignment, or transfer of his property for any purpose; but his answer shall not be used against him in any criminal proceeding or prosecution.*" This enactment was, undoubtedly, made to give a more full examination than could be attained without it. It was to relieve the party and those very witnesses in this case from the pains and penalties which their evidence might otherwise tend to subject them. The only criminal frauds that I am aware of, that could reach a case like this, are those imposed by section three, title six, chapter one, part four of the Revised Statutes. (3 R. S., 971, and § 39, 2 R. S., 133); the latter being the 26th section of the non-imprisonment act of 1831. The former declares that every person being a party to any conveyance, or assignment of any estate, or interest in lands, goods or things in action, or of any rents, or profits issuing therefrom, or to any charge on any such estates, interest, rents or profits, made or created with intent to defraud prior or subsequent purchasers, or to hinder, delay or defraud creditors or other persons; *and every person being privy to, or knowing of such conveyance, assignment or charge, who should willingly put the same in use, as having been made in good faith shall,* upon conviction, be adjudged guilty of a misdemeanor. (3 R. S., 971, § 3, 5th Ed.) The 39th section declares that " any person who shall remove any of his property out of any county with intent to prevent the same from being levied upon by any execution, or who shall secrete, assign, or convey, or otherwise dispose of any of his property with intent to defraud any creditor, or to prevent such property from being made liable for the payment of his debts, and any person who shall receive such pro-

perty, with any such intent, shall, on conviction, be deemed guilty of a misdemeanor, &c. (3 R. S., 133, § 39, 5th Ed.) The rule contended for by the appellant in this case would convict the legislature of the absurdity of putting these clauses exempting the party and the witnesses from all use of their testimony in any criminal proceeding, or prosecution against them for fraudulently transferring, or fraudulently receiving a transfer or conveyance with intent to hinder, delay, or defraud creditors, when the very same enactment of which this is a part, entirely forbids their being examined at all upon this subject. No construction of a statute should be allowed which leads to an absurdity ; and it is familiar rule of construction, that such exposition should be given to them, that every clause, sentence, or word, should be allowed to have some effect. (Smith on Statutes, p. 710, § 575.) No case could ever occur where these provisions of exemption could possibly be operative, if this act forbid any such examination, and consequently the provision itself would become a nullity. No rule of construction will allow us to give such effect to sections 299 as to produce such a result. That section is not so inconsistent with these provisions in sections 292, as to require any such construction. It is true, after the examination is through, and it turns out that there has been a fraudulent transfer, and that the party has the property, and claims to own it, the judge cannot set aside the sale and order the property to be given over to the creditor ; but the further proceeding to reach it must be through the appointment of a receiver and an action by such receiver. The court is authorized to appoint a receiver, and to make an order forbidding a transfer or other disposition of such property, till a sufficient opportunity be given to the receiver to commence such action, and to prosecute the same to judgment and execution. (Code, § 299.) The inquiry is not fruitless, if the investigation shows there has been a fraudulent transfer, and the property is still in the hands of the purchaser; the creditor may issue his execution and levy upon the same and sell it to pay his

judgment. If, on the other hand, the examination shows that the debtor has no property, and that sale and transfer of the property was honest, he has no occasion for a receiver, and none will be appointed. The right to appoint and restrain the person claiming to hold the property until the receiver can bring his suit to reach the property, rather, to my mind, strengthens than weakens the construction which we have given to the scope of this examination, under section 292. This privilege which is given to have a receiver appointed, and the judge, by order, to restrain the person having and claiming the property from transferring or otherwise disposing of the property, would be of little avail to the creditor if these witnesses can be sustained in their claim in this case. If the mouth of all parties to a fraudulent transfer, and of all other witnesses to the transaction, is so effectually sealed by these provisions, the title had better be changed to "*An act to sustain and protect fraudulent sales and conveyances.*" I am sustained in these views by the opinion of Judge DAVIES, in the case of *Sandford* v. *Carr* (2 Abbott's R., 462), and by the very satisfactory and able opinions of Judges ROSEKRANS and BOCKES, in this very case. (23 How. Pr. R., 424.) This is said to be a kind of fishing operation on the part of the creditor, and not to be countenanced by the judges, who administer the law. I have always supposed the old bill of discovery and for relief against the debtor was based upon the very sound theory that it was right and just for an honest creditor to fish a little after the property of a dishonest debtor, and that these proceedings supplementary to execution, under sections 292 and 294 of the Code, were given as a more simple and less expensive mode of accomplishing the same thing.

There is no severity or hardship in the law which requires an honest debtor to make a full disclosure to his creditor as to his property, and how it is situated, and an examination which seeks that in behalf of an honest creditor should not be characterized as a fishing excursion.

So again, an honest purchaser or other transferree of the

debtor's property should not be at all reluctant to explain to a creditor his purchase, and the circumstances of the transfer, as he will thereby, very likely, ·remove the suspicion of dishonesty, if any exist.　The creditor has a right to be informed fully in regard to his debtor's property, and he ought not to be regarded as meddlesome or impertinent in seeking honestly for such information, and there is no doubt in my mind but this 292d section of the Code secures this right fully to the creditor, and that he may inquire into any recent transfers of property, both from an examination of the defendant himself, and any party to the transaction or other witnesses.　There was no occasion to propound interrogatories to these defendants, as they did not deny any thing of which they have been convicted; and, as they were before the judge, on an order to show cause, and had been served with the affidavits and order, and had full opportunity to answer, no case for interrogatories was presented.　(*Pitt* v. *Davidson,* 37 N. Y. R., 235.)　The order appealed from should be affirmed with costs.

Since writing the above, my attention has been called to the question whether the judge had any jurisdiction to entertain these proceedings, to punish these parties for a contempt, upon the ground that a judge at chambers could not entertain these proceedings.　There are two answers to the objection.　In the first place, the papers seem to show that the proceedings were before the judge in court, and as it is known that the judges in the fourth district are in the habit of keeping their Special Terms adjourned to their chambers, for convenience of business, I presume that the proceedings, although transacted at the chambers of the judge, were in court.　I conclude this was so from the order itself.　The order is entitled in the Supreme Court, before ROSEKRANS, justice Supreme Court.　It was certainly so understood by the judges of the Supreme Court who heard the appeal, and of which Judge ROSEKRANS was one, for on their order, they say, the order of Special Term is affirmed with ten dollars costs.

There is another answer to this objection, the 296th section

of the Code provides that the party or witnesses may be required to attend before the judge or referee. The order referring this matter to Edgar Hall, Esq., as referee, required the referee to examine the defendant, and any witnesses that may be offered on oath, and reduce such examination to writing, and report such answers and examination to the judge. The order, requiring these parties to show cause, states that they are required to show cause why they should not be punished for their misconduct in refusing to answer the several questions put to them, and for violating the said order set forth in said affidavit, which is the order requiring the examination of the witnesses, and reducing their answers and examinations to writing, and report the same to the judge; under the final order, they are convicted of this contempt. Now the 302d section of the Code provides, that any person, party, or witness, disobeying an order of the *judge or referee*, duly served, such party or witness may be punished as for a contempt. In the first place, these witnesses were ordered to be examined, and their answers and examinations fully taken and returned, and they, after being sworn, refuse to give any answers. In the second place, they were ordered to, and required by the referee, to answer these questions, and disobeyed his order. It may be said, that the papers do not show that the judge reduced this order to writing, and served it upon the witnesses, and therefore they cannot be punished as for a contempt by a judge out of court. I do not think such a construction should be given to this section. There is no sense in requiring a special order to be reduced to writing requiring the witness to answer every question which he may see fit to refuse, and then to go through the formality of serving the order on the witness. If this were done, no one can doubt the judge could punish for disobedience; for the very language of the section is, that the judge may punish any witness who shall disobey any order of the referee duly served.

The object and design of this 302d section of the Code was to give full power to the judge to punish any witness for con-

tempt of referee's orders, that a full and complete examination of the witness might be secured without a special application to the court to compel it; and, I think, when the referee orders the witnesses to answer to questions, that is a sufficient service, if the witness is present when the referee orders him to answer. The practice, I am sure, has been so understood, and it would be almost intolerable to require the referee to make 150 or 200 or any number of orders, in writing, requiring the witness to answer, and have them formally served upon the witness. Every statute should have a reasonable intendment and receive a reasonable construction. I think the judge, out of court, had complete authority to punish these parties.

MURRAY, J. (dissenting.) The order appealed from in this case arises out of a proceeding supplementary to an execution on a judgment in favor of the plaintiffs against Marvin W. Clapp. The execution had been returned unsatisfied, May 10th, 1861. Justice ROSEKRANS made an order requiring the said judgment debtor to appear before a referee, and be examined as to his property. It also authorized the referee to take the evidence of any witness that might be produced before him by the parties. In pursuance of the order the said Marvin W. Clapp appeared before said referee and was examined, and Benjamin Clapp and Theodore W. Clapp were called as witnesses by the plaintiff, and they were sworn and each of them refused to answer many questions which were propounded to them by the plaintiff, that the referee ruled were proper, and directed them to answer. The questions were mainly in regard to property that once belonged to the said Marvin W. Clapp, and was alleged to have been transferred by him to the said Benjamin Clapp and Theodore W. Clapp. They refused to testify in regard to such transfer, or the consideration thereof, or the object or manner of doing it.

Such questions were proper. A full examination should have been submitted to by these two witnesses. They should

have explained fully in regard to the transfer, its considera-
tion, the circumstances attending it, and the manner and
object of making it.   The plaintiffs were entitled to go into
such investigation, that the court might be informed whether
the debtor had any equitable or legal interest in the property
alleged to be transferred; whether there was probable cause
to believe he had such interest as to justify the judge in
appointing a receiver.   Not for the purpose of finally adjudg-
ing and determining in whom the title to this property was,
and ordering it to be applied on the judgment, but for the
purpose of determining whether or not a receiver should be
appointed, who would be authorized to bring an action to
recover such equitable, or legal interest.   The latter part
of section 292 clearly indicates that such examination may
be had, and section 299 is not inconsistent with such right.
This must be treated as if there was no other property, and
the appointment of receiver depended upon this alone.

These witnesses did not deny their refusal to answer these
questions.   They appeared before the judge, on the return
of the order to show cause, and attempted to justify such
refusal.   Therefore no interrogatories were necessary to be
filed. (*Pitt* v. *Davidson*, 37 N. Y. R., 235.)   It is not stated
in the order to punish these witnesses that it was adjudged
that their misconduct was calculated or actually did defeat,
impair, impede or prejudice the rights or remedies of any
party to the proceeding.

It is required to be so adjudged by section 20 of the
2 R. S., p. 538.   It is not required to be so adjudged if the
contempt can be punished under section 302 of the Code.
Code, section 275, provides that witnesses may be required
to appear and testify, on any proceedings under this chapter,
in the same manner as upon the trial of an issue.   Code,
section 302, provides, if any person, party or witness disobey
an order of the judge or referee, duly served, such person,
party or witness may be punished by the judge as for con-
tempt.

If the disobedience of a witness, in refusing to answer

questions after he is sworn, under the rulings and direction of the referee, without any written order being made or served upon him, comes within the provisions of this section, 302, of the Code, the order of the judge appealed from is right. If not, it is wrong for two reasons:

1st. The judge, as such, has no power to punish for contempt under the Revised Statutes. (2 R. S., 534, §§ 4, 5 and 6.)

2d. The order does not state that the proceedings had been impeded, impaired, prejudiced or defeated by such misconduct. (2 R. S., 538, § 20.)

A person that voluntarily appears and is sworn as a witness, and refuses to answer certain questions when no written order is made or served upon him, although he be directed by the referee to answer, does not disobey any order of the judge or referee that has been duly served upon him, and his misconduct does not come within the provisions of that section of the Code.

It is a jurisdictional question, and when a judge, as such, makes an order he must find his authority apparent in the statute. In this case there were not such papers before the judge as to give him authority to make this order. The only way such misconduct as this can be punished is by an application to the court, at Special Term, under the Revised Statutes. It may, in that way, be punished. (*Wicker* v. *Dresser*, 13 Howard, 331; *Hilton* v. *Patterson*, 18 Abbott, 245; *Kearny's Case*, 13 Abbott, 459.) The judge, in this case, had no jurisdiction to make the order appealed from. It should, therefore, be reversed together with the order of the General Term affirming it. No point was made that said order was not appealable to this court.

All the judges, but MURRAY, who was for reversal, and WOODRUFF, who did not vote, being for affirmance.

Order affirmed.