■ Matter of COLONIAL SURETY COMPANY, Appellant-Respondent, v LAKEVIEW ADVISORS, LLC, Respondent-Appellant, and RESOLUTION MANAGEMENT, LLC, Respondent, et al., Respondent. (Appeal No. 2.) [941 NYS2d 371]—

Motion for reargument of the appeal and cross appeal is granted and, upon reargument, the memorandum and order entered February 18, 2011 (81 AD3d 1460 [2011]) is amended by adding to the first sentence of the order the words "and cross appeal" after the word "Appeal" and, beginning with the second paragraph, is otherwise vacated and the following memorandum and ordering paragraph is substituted therefor:

"It is hereby ordered that the cross appeal is unanimously dismissed and the order and judgment so appealed from is reversed on the law without costs, the petition is reinstated and the matter is remitted to Supreme Court, Erie County, for further proceedings in accordance with the following memoran-

dum: Petitioner previously obtained a judgment against Paul W. O'Brien, the manager and sole principal of respondent Lakeview Advisors, LLC (Lakeview). Petitioner commenced this proceeding pursuant to CPLR article 52 seeking to enforce that judgment with respect to, inter alia, a debt owed to Lakeview by respondent Resolution Management, LLC (Resolution), as well as Resolution's accounts receivable in which Lakeview had a security interest. Petitioner contended that it was entitled to pierce the corporate veil of Lakeview and thus to execute its judgment upon Lakeview's interest in that property. In appeal No. 1, petitioner appeals from an order that, inter alia, directed Resolution to pay the sum of $537,000 into an escrow account pending resolution of the proceeding. In appeal No. 2, petitioner appeals from an order and judgment that, inter alia, vacated the order in appeal No. 1 and dismissed the petition.

Initially, we note that the appeal from the order in appeal No. 1 must be dismissed because the right to appeal from that intermediate order terminated upon the entry of the order and judgment in appeal No. 2 (*see Murphy v CSX Transp., Inc.* [appeal No. 1], 78 AD3d 1543 [2010]; *Smith v Catholic Med. Ctr. of Brooklyn & Queens*, 155 AD2d 435 [1989]). The issues raised in appeal No. 1 will be considered upon the appeal from the order and judgment in appeal No. 2 (*see Matter of Aho*, 39 NY2d 241, 248 [1976]).

Next, we note that the cross appeal in appeal No. 2 must be dismissed. Lakeview, "wh[ich] is not aggrieved by the [order and] judgment . . . appealed from [in appeal No. 2] and wh[ich], therefore, has no right to bring an appeal [therefrom], is entitled to raise an error made below, for review by the appellate court, as long as that error has been properly preserved and would, if corrected, support a judgment in [its] favor . . . Any such error is reviewable once[, as here,] the final judgment or order has been properly appealed from by the losing party" (*Parochial Bus Sys. v Board of Educ. of City of N.Y.*, 60 NY2d 539, 546 [1983]). We conclude that the issue raised by Lakeview was properly preserved and would warrant judgment in its favor in the event that it had merit. Therefore, although we must dismiss the cross appeal because Lakeview is not aggrieved, we consider its contention as an alternate ground for affirmance. Nevertheless, we further conclude that Lakeview's contention is without merit because we agree with petitioner that Supreme Court abused its discretion in dismissing the petition.

By its order and judgment in appeal No. 2, the court reverse-pierced the corporate veil of Lakeview and concluded that it was the alter ego of O'Brien based, inter alia, upon the evidence in

the record establishing that O'Brien was using Lakeview in an attempt to thwart petitioner's attempts to collect on its underlying judgment. Respondents contend that we should determine that the court erred in reverse-piercing the corporate veil and in concluding that Lakeview, a limited liability company, was the alter ego of O'Brien. We reject that contention.

Contrary to respondents' contention, petitioner satisfied its burden of justifying the piercing of the corporate veil. It is well settled that "the doctrine of piercing the corporate veil . . . applies to limited liability companies . . . In so doing, [petitioner] bears 'a heavy burden of showing that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences' " (*Retropolis, Inc. v 14th St. Dev. LLC*, 17 AD3d 209, 210 [2005], quoting *TNS Holdings v MKI Sec. Corp.*, 92 NY2d 335, 339 [1998]). Here, O'Brien in fact admitted that he dominated the limited liability company (LLC). In addition, the evidence in the record demonstrates that O'Brien established the LLC after the prior judgment at issue herein was entered against him in order to shield his assets from petitioner, and after he fraudulently attempted to have the debt discharged in bankruptcy. Furthermore, he used LLC funds to pay personal expenses, make payments to his wife in lieu of his salary, and contribute to his personal IRA account. He also closed his personal checking account and used Lakeview checks to pay his personal bills. Based on those actions, we conclude that inequitable consequences would result if we were to permit him to shield his assets from petitioner, his judgment creditor, by misusing the LLC in this manner (*see generally National Union Fire Ins. Co. of Pittsburgh, Pa. v Bodek*, 270 AD2d 139 [2000], *lv dismissed* 95 NY2d 887 [2000], *rearg denied* 95 NY2d 959 [2000]; *Austin Powder Co. v McCullough*, 216 AD2d 825 [1995]). Thus, the court did not abuse its discretion in reverse-piercing Lakeview's corporate veil.

In its bench decision underlying the order and judgment in appeal No. 2, the court concluded, among other things, that it "would not be equitable" to permit petitioner to pursue money that Resolution owed to Lakeview because to do so would "prejudice creditors of Lakeview," i.e., six entities (hereafter, note holders) that allegedly loaned Lakeview the money that it in turn later loaned to Resolution. We agree with petitioner that, based on the evidence in the record and the court's determination of the credibility of the witnesses who testified at the hearing on the instant petition, the court abused its discretion in its balancing of the equities.

It is clear that the court has the authority under CPLR article 52 to consider the rights of other entities who may also have a claim to property or debts owed to a judgment creditor and, indeed, pursuant to CPLR 5225 (b) and 5227, "[t]he court may permit any adverse claimant to intervene in the [CPLR article 52] proceeding and may determine his [or her] rights in accordance with section 5239." In addition, "CPLR 5240 grants the courts broad discretionary power to control and regulate the enforcement of a money judgment under article 52 to prevent 'unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts' " (*Guardian Loan Co. v Early*, 47 NY2d 515, 519 [1979]; *see Rondack Constr. Servs., Inc. v Kaatsbaan Intl. Dance Ctr., Inc.*, 13 NY3d 580, 585 [2009]; *Matter of Stern v Hirsch*, 79 AD3d 1046 [2010]). The statute "serves as an equitable safety valve which allows a court to restrain execution upon its judgment where unwarranted hardship would otherwise result. The decisional process invoked is the balancing of harm likely to result from execution, against the necessity of using that immediate means of attempted satisfaction" (*Seyfarth v Bi-County Elec. Corp.*, 73 Misc 2d 363, 365 [1973]; *see Fiore v Oakwood Plaza Shopping Ctr.*, 178 AD2d 311, 312 [1991], *appeal dismissed* 80 NY2d 826 [1992]). One of the factors that the court was required to consider was whether "the record supports the [petitioner]'s contention that [respondents are] attempting to frustrate [petitioner]'s attempts to collect the money owed" to petitioner by O'Brien (*Putnam County Natl. Bank of Carmel v Pryschlak*, 226 AD2d 358, 358 [1996]; *see Matter of AMEV Capital Corp. v Kirk*, 180 AD2d 791 [1992]).

Here, we conclude that the court failed to consider petitioner's right to execute upon its judgment, failed to take proper consideration of respondents' efforts to prevent petitioner from collecting on its judgment, and reached its conclusion regarding the prejudice to the note holders in the absence of any compelling evidence that such prejudice exists. Although both O'Brien and Mark Bohn, the president of Resolution, testified at the hearing on the petition that the note holders would be damaged, their credibility was severely damaged by, among other things, the court's finding that one of O'Brien's affidavits was "inherently incredible," and the denial of O'Brien's request to discharge in bankruptcy the judgment underlying this proceeding on the ground that he provided false filings and testimony in the bankruptcy matter. Indeed, notably absent from the record is any testimony or evidence from the note holders establishing that Resolution in fact repurchased the original notes, what the terms of such a repurchase might have been, or how the

note holders would be prejudiced by any default or delay in repayment of their loans. In addition, the substituted promissory notes that allegedly demonstrated that a repurchase of the loan occurred were not notarized, and they were undated with the exception of one dated approximately eight months before the repurchase transaction is alleged to have occurred. Based upon our review of the record as a whole, we conclude that the court erred in determining that the prejudice to the note holders outweighed petitioner's right to collect on its judgment.

Consequently, we reverse the order and judgment and reinstate the petition, and we remit the matter to Supreme Court for further proceedings, including a new hearing on the petition. The court may determine the rights of any claimant to the funds held in escrow upon the intervention of such party pursuant to CPLR 5225 (b) and 5227. We further direct that, pending the disposition of the petition, the second, third and sixth ordering paragraphs of the order of this Court dated November 5, 2010 shall continue to be in full force and effect unless modified by Supreme Court in accordance with our decision herein, and we expressly incorporate those ordering paragraphs into our order in appeal No. 2. We note that petitioner has made several motions in this Court seeking discovery with respect to Resolution's compliance with the conditions of the order of this Court dated November 5, 2010. We refer those matters to Supreme Court, to be resolved in conjunction with the further proceedings on the petition.

We have considered petitioner's remaining contentions and conclude that they are without merit, or are academic in light of our determination. Present—Smith, J.P., Peradotto, Lindley, Sconiers and Martoche, JJ.